## 55036. SEABOARD COAST LINE RAILROAD COMPANY et al. v. UNION CAMP CORPORATION et al.

McMurray, Judge.

This case originally began as a damage suit resulting from a tractor-trailer collision with a freight car being switched on property of Union Camp Corporation. The owner of the tractor-trailer, George C. Sammons, d/b/a G. C. Sammons Trucking Company (no longer involved in this litigation), in addition to suing Union Camp Corporation, sued the Seaboard Cost Line Railroad Company, the Central of Georgia Railroad Company, Southern Railway Company, Tidewater Construction Corporation, and Natkin & Company. The latter two defendants were named because of construction of a shed placed upon Union Camp's property for construction work which blocked out and prevented the tractor-trailer driver being aware of any train approaching the intersection.

In the main trial of the case a jury returned a verdict on special interrogatories declaring the owner of the tractor-trailer to be 25% negligent and the two railroads (Seaboard Coast Line Railroad Company and Central of Georgia Railroad Company) 75% negligent. The remaining defendants, including Union Camp Corporation, were found not to be negligent. The railroads paid the judgment of $12,011.87.

The remaining litigation involves cross claims by the railroads against Union Camp Corporation and indemnification under the provisions of the switching agreement under which the freight car movement was conducted on the property of Union Camp. The issue of indemnification raised by the railroads' cross claims was submitted to the trial court on a joint motion for summary judgment. The trial court denied the railroads' motion and granted Union Camp's motion dismissing the railroads' cross claims for indemnification (treating same

as a motion for summary judgment). The defendants appeal. *Held:*

The railroads contend that under the contract they are indemnified against any loss, including loss caused by their own negligence, arising out of accidents at grade crossings on Union Camp's property. Union Camp contends the indemnification provision does not cover such instances caused by the railroads' negligence, and since the jury has found the railroads to be negligent it cannot be held liable to the railroads on the cross claims. The language in question holds that Union Camp is at all times to protect, hold harmless, and indemnify the railroads "collectively and individually, against any and all loss, cost, damage and expense accruing account of any road crossing at grade with tracks of Union Camp." Other paragraphs indemnify the railroads against damages caused by substandard clearances, injuries or damages caused by obstructions and the like on the tracks and negligence of Union Camp in maintaining the tracks which it agreed to do specifically. The trial court held that the broadly worded language in which Union Camp indemnifies the railroads "against any and all loss... at grade crossings account of any road crossing at grade with tracks of Union Camp" was the key, the key words being "any and all loss." The court then citing *Bohannon v. Southern R. Co.,* 97 Ga. App. 849 (104 SE2d 603); and *Rome Builders Supply, Inc. v. Rome Kraft Co.,* 104 Ga. App. 488 (3) (122 SE2d 133), held that a contract of indemnity will not be construed as holding the indemnitor liable to the indemnitee for the indemnitee's own negligence unless the contract states that obligation in clear and unequivocal language. Whereupon the court held that the railroads were not entitled to recover from Union Camp for the judgment entered against them in the main case, granting summary judgment in favor of the defendant Union Camp Corporation and dismissing the cross claims of Seaboard Coast Line Railroad Company and Central of Georgia Railroad Company. It is quite obvious here that the language in the indemnity agreement did not excuse the railroads from liability created by their own negligence so as to hold the indemnitor, Union Camp Corporation, liable for the negligence of the railroads. In

addition to the cases above see *Massee & Felton Lumber Co. v. Ga. & Fla. Railway,* 143 Ga. 173 (84 SE 468); *Batson-Cook Co. v. Georgia Marble Setting Co.,* 112 Ga. App. 226 (144 SE2d 547).

*Ga. Ports Authority v. Central of Ga. R. Co.,* 135 Ga. App. 859 (219 SE2d 467), which likewise involved an indemnification agreement is distinguishable on its facts from the case sub judice. There plaintiff sued both Georgia Ports Authority for simple negligence in allowing an unsafe condition to exist by not properly lighting the area in the vicinity of the tracks used to service its docks and allowing a drain hole to be uncovered; and Central of Georgia Railway Company for failing to furnish its employees a safe place in or upon which to work, a statutory duty under the provisions of the Federal Employers' Liability Act. After a consent verdict was entered in favor of the plaintiff against the defendants, the cross claim filed by Central of Georgia against the Ports Authority under the indemnification agreement was then considered, each defendant in the original case filing motions for summary judgment in the cross claim. The trial court held the indemnification agreement would apply to liability of the Central of Georgia arising out of the Federal Employers' Liability Act. This court affirmed that judgment, holding the contract whereby Central of Georgia contracted with the Ports Authority to perform all necessary switching services on those tracks known as the Central Water Front Terminal required Central of Georgia to perform services as a private contracting party and not in its regular course of business as an interstate common carrier. The Authority was required "at its sole expense, to maintain or cause to be maintained in good and safe condition all of its tracks, together with bridges, trestles, wharves and all other structures supporting said tracks." The Authority was to be solely responsible for, and would bear all loss or damage incident to damage or destruction of the railroad's engines and cars except where caused by the sole negligence of the railroad, and "would hold the railroad harmless from third-party claims resulting from negligence or other causes arising from the operation of the switching services on the Authority's property." The court also held: "The only

limitation to the authority's liability was where the loss or injury would be as the result of the sole negligence of the railroad with no contributing negligence by the authority." It is quite clear that the case is not controlling here. Under the trial court's construction of the indemnity clause involved in the case sub judice we find no error.

*Judgment affirmed. Quillian, P. J., and Webb, J., concur.*

ARGUED JANUARY 11, 1978 — DECIDED MARCH 7, 1978 — REHEARING DENIED MARCH 28, 1978 — CERT. APPLIED FOR.

*Miller, Beckmann & Simpson, John B. Miller,* for appellants.

*Adams, Adams, Brennan & Gardner, Edward T. Brennan, Stanley E. Harris, Jr., Corish, Smith, Remler & Moore, Malberry Smith, Jr., Stanley Karsman,* for appellees.