**SOUTHERN RAILWAY COMPANY,**
Plaintiff-Appellee,

v.

**GEORGIA KRAFT COMPANY,**
Defendant-Appellant.

No. 86–8379.

United States Court of Appeals,
Eleventh Circuit.

Aug. 4, 1987.

---

Robert A.B. Reichert, Macon, Ga., for defendant-appellant.

F. Kennedy Hall, J. Steven Stewart, Macon, Ga., for plaintiff-appellee.

Before RONEY, Chief Judge, KRAVITCH and EDMONDSON, Circuit Judges.

EDMONDSON, Circuit Judge:

Georgia Kraft Company ("Georgia Kraft") appeals from a jury verdict rendered against it in the United States District Court for the Middle District of Georgia. Because we find that the district court erroneously restricted the issues presented to the jury, we vacate the district court's judgment and remand for a new trial.

In 1951, Georgia Kraft and Southern Railway Company ("Southern Railway") made a sidetrack agreement, placing on each of the parties obligations to be performed in Bibb County, Georgia. As part of the agreement, Georgia Kraft agreed to maintain the sidetrack and to indemnify Southern Railway against "any and all damage resulting from negligence of" Georgia Kraft.[1]

On September 12, 1980, Rufus Johnson, an employee of Southern Railway, was on the premises of Georgia Kraft to switch various rail cars on the tracks covered by the sidetrack agreement. Georgia Kraft had been having problems with water overflows from nearby tanks that caused an area of mud and slush around its sidetracks. In the line of his work, Johnson crossed that muddy area. A while later, he crossed the track by mounting the ladder on one side of a car, crossing the catwalk between cars, and coming down the ladder on the other side. As he was dismounting the ladder, he fell and injured his right knee.

Johnson sued Georgia Kraft in state court, contending that the mud he picked up while crossing the sidetrack caused him to fall. The court in that action granted

---

1. The indemnity provision is contained in Paragraph 5 of the agreement, which provides that:
   ... the PARTY OF THE SECOND PART [Georgia Kraft Co.] hereby covenants and agrees in consideration of the advantage to be by it derived from the operation of said industrial tracks:
   ... 5. That it will indemnify and save harmless the Railway Company against any and all damage resulting from negligence of the party of the second part, its servants and employees, in and about said industrial tracks and the rights of way therefor; and furthermore, against any and all claims, demands, suits, judgments or sums of money accruing for loss or damage by fire communicated by locomotive engines or trains of the Railway Company to buildings or structures used by the party of the second part, or its tenants, in connection with the business served by said tracks, or to the contents of such buildings or structures, or to other property stored by or with the consent of the party of the second part upon or near said tracks. The Railway Company hereby stipulates for this protection, as a condition of its agreement, herein expressed, to afford the above described terminal services and facilities to the party of the second part elsewhere than at its regular station.

summary judgment in favor of Georgia Kraft.[2]

Johnson filed a different suit against Southern Railway under the Federal Employers' Liability Act (FELA), 45 U.S.C.A. sec. 51, et seq. (1972). Southern Railway advised Georgia Kraft that it intended to settle with Johnson and offered Georgia Kraft the opportunity either to settle or to take over the defense of the case against Southern Railway. Georgia Kraft declined to do either. Southern Railway subsequently decided to settle with Johnson and to do so paid the amount of $275,000.00.

After settling with Johnson, Southern Railway sued Georgia Kraft for indemnity under the terms of the sidetrack agreement, invoking the diversity jurisdiction of the federal district court. At the first pre-trial conference, the parties agreed that the issues to be submitted to the jury included whether or not Georgia Kraft was negligent and whether the negligence of Georgia Kraft, if any, was the proximate cause of the injury to Johnson.

At a second pre-trial conference held the afternoon before the trial, the district court judge decided not to present those issues to the jury, but to limit the issues to whether the settlement paid by Southern Railway to Johnson was reasonable. The jury decided that it was, and the court entered judgment in favor of Southern Railway in the amount of the settlement plus legal fees, expenses, and interest from the date of payment of the settlement. Georgia Kraft appealed to this court.

Georgia Kraft's primary contention is that the district court erred by restricting the issues in the trial. Georgia Kraft argues that the jury should have also been allowed to determine whether Georgia Kraft was negligent in its maintenance of the sidetrack and, if so, whether that negligence was the cause of Johnson's injury.

In our view, the district court limited the issues for trial too much.

For many years, the majority rule was that an indemnitee, such as Southern Railway, must show actual liability to an injured person before it could recover against an indemnitor, in this case Georgia Kraft. *See, e.g., Southern Ry. Co. v. A.O. Smith Corp.*, 134 Ga.App. 219, 213 S.E.2d 903 (1975) (judgment required for indemnity prior to 1972). The rule gradually changed, however, so that an indemnitee, after giving the indemnitor notice and an opportunity to defend, could settle a lawsuit and claim indemnity upon a showing that the decision to settle was reasonable. *See Missouri Pacific R.R. Co. v. Arkansas Oak Flooring Co.*, 434 F.2d 575, 580 (8th Cir.1970); *Miller & Co. of Birmingham v. Louisville & Nashville R.R. Co.*, 328 F.2d 73, 78 (5th Cir.), *cert. denied*, 377 U.S. 966, 84 S.Ct. 1648, 12 L.Ed.2d 737 (1964)[3]; *Chicago, R.I. & P.R. Co. v. Dobry Flour Mills, Inc.*, 211 F.2d 785, 788 (10th Cir.), *cert. denied*, 348 U.S. 832, 75 S.Ct. 55, 99 L.Ed. 656 (1954); *Superior Rigging & Erecting Co. Inc. v. Ralston Purina Co.*, 172 Ga. App. 79, 322 S.E.2d 95 (1984); *Ranger Construction Co. v. Robertshaw Controls Co.*, 158 Ga.App. 179, 279 S.E.2d 477 (1981); O.C.G.A. sec. 51–12–32(c) (1982).

In the instant case, Southern Railway notified Georgia Kraft of the lawsuit and gave that company an opportunity to defend, but Georgia Kraft refused. At trial, therefore, Southern Railway was not required to prove that it actually would have been liable to Johnson, only that it was potentially liable and settled the lawsuit in good faith.

■ The fact that an indemnitee was potentially liable to an injured party is a necessary condition for the indemnitor to be liable to the indemnitee. Still, if the indemnitee reasonably settled with the in-

---

**2.** In the state court action, Georgia Kraft denied any negligent conduct but moved for summary judgment based on Johnson's equal knowledge of the hazardous conditions. The record before us does not contain a transcript of the hearing on that motion. The state court granted Georgia Kraft's motion without opinion and dismissed the complaint.

**3.** In *Bonner v. City of Prichard*, 661 F.2d 1206 (11th Cir.1981) (*en banc*), this court adopted as precedent all decisions of the former Fifth Circuit Court of Appeals decided prior to October 1, 1981.

jured party, but the injury is not covered by the indemnity agreement, then the indemnitor is not liable to the indemnitee.[4] Thus, the question of the coverage of the indemnity contract between Georgia Kraft and Southern Railway remains to be decided. *Missouri Pacific R.R. Co. v. Int'l Paper Co.*, 618 F.2d 492, 496 (8th Cir.1980); *cf. Southern Ry. Co. v. Acme Fast Freight*, 193 Ga. 598, 19 S.E.2d 286 (1942) (under Georgia vouching statute, judgment conclusive as to liability of indemnitee, but not indemnitor). Georgia Kraft agreed to indemnify Southern Railway against "any and all damage resulting from negligence of" Georgia Kraft Co. or Georgia Kraft's agents.

One strong maxim of Georgia indemnity law is that indemnity contracts will be construed to hold an indemnitee (here Southern Railway) harmless against its own actions only when that intent is expressed in plain, clear, and unequivocal terms. *Brown v. Seaboard Coast Line R. Co.*, 554 F.2d 1299 (5th Cir.), *cert. denied*, 434 U.S. 975, 98 S.Ct. 533, 54 L.Ed.2d 467 (1977); *Foster v. Kenimer*, 167 Ga.App. 567, 307 S.E.2d 30 (1983); *Bohannon v. Southern Ry. Co.*, 97 Ga.App. 849, 104 S.E.2d 603 (1958). In the absence of explicit language, courts will not interpret an indemnity agreement as a promise to indemnify regardless of fault. *Georgia State Telephone Co. v. Scarboro*, 148 Ga.App. 390, 251 S.E.2d 309 (1978).

In the instant case, there is no indication that by promising to indemnify against damage caused by its own negligence, Georgia Kraft intended to indemnify Southern Railway regardless of who was at fault. The language in this contract is a far cry from that in cases where Georgia courts have found an intention to indemnify for the other party's fault. *See, e.g., Southern Ry. Co. v. Ins. Co. of North America*, 228 Ga. 23, 183 S.E.2d 912 (1971) ("whether the [loss, injury or damage] may result from the negligence of Railroad or otherwise"); *Arthur Pew Construction Co., Inc. v. Bryan Construction Co., Inc.*, 156 Ga.App. 780, 275 S.E.2d 384 (1980) ("any and all claims ... which arise out of the act or omission" of indemnitor); *Georgia Ports Authority v. Central of Georgia Ry. Co.*, 135 Ga.App. 859, 219 S.E.2d 467 (1975) ("negligence or other causes"); *Seaboard Coast Line R.R. Co. v. Dockery*, 135 Ga.App. 540, 218 S.E.2d 263 (1975) ("caused by or in any way connected with" indemnitor's use of premises); *accord, Smith v. Seaboard Coast Line R.R. Co.*, 639 F.2d 1235 (5th Cir. Unit B 1981) ("in any way connected with" indemnitor's use of leased property)[5]; *Miller & Co. of Birmingham v. Louisville & Nashville R.R. Co.*, 328 F.2d 73, 76 (5th Cir.) ("any and all claims"), *cert. denied*, 377 U.S. 966, 84 S.Ct. 1648, 12 L.Ed.2d 737 (1964); *Seaboard Coast Line R.R. Co. v. Union Camp Corp.*, 145 Ga.App. 417, 243 S.E.2d 631 (1978) ("any and all loss" insufficient to cover negligence of indemnitee); *Robert & Co. Assocs. v. Pinkerton & Laws Co.*, 120 Ga.App. 29, 31, 169 S.E.2d 360, 363 (1969) ("if the word negligence had been used then it might be open to question that it was limited to liability only for negligence"). Georgia law, then, requires a conclusion that Georgia Kraft agreed only to indemnify for damages caused by Georgia Kraft's negligence.

The remaining question is the definition of negligence that the indemnity agreement contemplated. Georgia Kraft argues that the word "negligence" means common-law negligence, while Southern Railway contends that it meant only the degree

---

**4.** If the contract contemplated that Georgia Kraft would be liable for *any* actions or omissions that would make Southern Railway liable to railroad employees, our inquiry would end here. Southern Railway's settlement with Johnson would determine both its liability under FELA and Georgia Kraft's liability under the indemnity provision of the sidetrack agreement. *See, e.g., Burlington Northern, Inc. v. Hughes Bros., Inc.*, 671 F.2d 279, 283–84 (8th Cir.1982); *Missouri Pacific R.R. Co.*, 618 F.2d at 496; *Steed*

*v. Central of Georgia Ry. Co.*, 529 F.2d 833, 837 (5th Cir.), *cert. denied*, 429 U.S. 966, 97 S.Ct. 396, 50 L.Ed.2d 334 (1976); *Miller & Co. of Birmingham*, 328 F.2d at 77–78; *Dobry Flour Mills, Inc.*, 211 F.2d at 788.

**5.** In *Stein v. Reynolds Securities, Inc.*, 667 F.2d 33, 34 (11th Cir.1982), the Eleventh Circuit Court of Appeals adopted as precedent all decisions of Unit B of the former Fifth Circuit.

of negligence necessary for liability under FELA. We conclude that the agreement contemplated common-law negligence.

In *Georgia Ports Authority*, 135 Ga. App. 859, 219 S.E.2d 467, the Georgia Court of Appeals found that the indemnity contract contemplated statutory liability under FELA. The court, however, rested its holding on language in the indemnity agreement in which the indemnitor agreed to indemnify "against any and all claims ... resulting from negligence *or other causes*." *Id.* at 861–63, 219 S.E.2d at 469–70 (emphasis added). *See also Union Camp Corp. v. Louisville & Nashville R.R. Co.*, 130 Ga.App. 113, 202 S.E.2d 508 (1973) (agreement to indemnify against losses arising from "any injuries, loss, or damage caused by or contributed to by the failure of [the indemnitor] ... to keep the right-of-way of said sidetrack free and clear" included FELA liability). In other cases where the courts have held an indemnity agreement to cover FELA liability, the contracts have contained similar language. *See, e.g., Burlington Northern, Inc.*, 671 F.2d at 284 ("any act or omission"); *Missouri Pacific R.R. Co.*, 618 F.2d at 496 ("any act or omission"); *Steed*, 529 F.2d at 837 ("any act or omission"); *Dobry Flour Mills, Inc.*, 211 F.2d at 788 ("any act or omission").

In this case, the indemnity agreement clearly says "negligence" of Georgia Kraft. There is no language indicating any ground for liability other than common-law negligence. The duty that Georgia Kraft owed to Johnson, then, is to be measured, not according to FELA standards, but according to the standards of common-law negligence.

■ Georgia Kraft's liability to Southern Railway, however, is not so confined as its liability to Rufus Johnson. By signing the indemnification agreement, Georgia Kraft also assumed a contractual duty to Southern Railway. That duty is to indemnify Southern against *"any and all damage*

resulting from"* the negligence of Georgia Kraft (emphasis added). "Any and all damage" would encompass any potential liability by Southern Railway, caused by Georgia Kraft's negligence. Thus, if Georgia Kraft breached its duty of care toward Johnson, and that breach caused Southern Railway to be potentially liable to Johnson, under either common-law negligence or FELA standards, then Georgia Kraft must indemnify Southern Railway.

The evidence in the record is far from conclusive that Georgia Kraft was negligent in its common-law duty toward Johnson or that the negligence, if any, in fact caused—or put differently, justified—Southern Railway's payment to Johnson of $275,000. Consequently, Georgia Kraft has a right to have determined in a judicial proceeding (1) whether Georgia Kraft breached its common-law duty of care to Rufus Johnson, (2) if so, whether that breach caused Southern Railway to be potentially liable (pursuant to FELA or otherwise) to Johnson, and (3) whether the settlement entered into between Southern Railway and Johnson was reasonable and made in good faith. Accordingly, the trial court erred in limiting the trial to whether the settlement paid to Johnson was reasonable.

In light of this error, the case must be remanded for a new trial. Other issues were raised on appeal, but it is unnecessary that they be reached.[6]

Accordingly, we VACATE the judgment of the district court and REMAND for a new trial in accordance with this opinion.

---

**6.** Evidentiary questions are rarely well decided in the abstract; the answers are too dependent upon the actual circumstances existing at trial. Obviously the injection of new issues on retrial will present the trial judge and the parties with different circumstances; and the district court and the parties may consequently reconsider and change their minds as to how to handle these evidentiary matters next time. This remand allows them to do so freely.